Richard NEW and Lake Cumberland Funeral Home, Appellants/Cross-Appellees,

v.

COMMONWEALTH of Kentucky, Kentucky Board of Embalmers; Commonwealth of Kentucky, Funeral Directors, Appellee/Cross-Appellant.

Nos. 2003–CA–001732–MR, 2003–CA–001826–MR.

Court of Appeals of Kentucky.

Feb. 4, 2005.

---

10. *Kentucky High School Athletic Ass'n v. Davis*, 77 S.W.3d 596, 599 (Ky.App.2002).

Doreena A. Fox Forsythe, Louisville, KY, for appellants/cross-appellees.

Gregory D. Stumbo, Attorney General of Kentucky, James J. Grawe, Assistant Attorney General, Frankfort, KY, for appellee/cross-appellant.

Before COMBS, Chief Judge; GUIDUGLI and SCHRODER, Judges.

## OPINION

COMBS, Chief Judge.

Lake Cumberland Funeral Home (Lake Cumberland), and its funeral director, Richard New, appeal from that portion of a judgment of the Franklin Circuit Court of July 29, 2003, which affirmed a final

order of the Kentucky Board of Embalmers and Funeral Directors (the Board). The court upheld the Board's decision to sanction the appellants for permitting unlicensed individuals to perform embalming services in violation of KRS[1] 316.030(1). The appellants argue that the Board's decision is arbitrary and that its findings of fact are unsupported by substantial evidence.

The Board has cross-appealed, arguing that the court erred as a matter of law in reversing the Board's conclusion that New violated KRS 213.076(1), a statute relating to the filing of death certificates. The Board challenges the court's interpretation of the statute as permitting an employee or agent of a funeral home to sign a provisional death certificate. After a careful review of the record, we affirm both as to the appeal and the cross-appeal.

In July 2001, the Board received a written complaint from Linda Sturgeon, a funeral director and licensed embalmer. Sturgeon alleged that Lake Cumberland had allowed unlicensed persons "to pick up bodies, embalm bodies, direct funerals, and direct graveside services." In her complaint, she named Oren Barnhill, Randy Wiles, and Gary Williams as persons who had performed embalming services at Lake Cumberland without being licensed to do so.

Following an investigation, the Board filed a formal complaint in November 2001 against Lake Cumberland and New for violating KRS 316.030(1). New was also charged with violating KRS 213.076(1) for allowing Roy Garner, an apprentice/employee, to sign New's name to a provisional death certificate.

An extensive hearing on the charges was conducted over the course of three days during June and July of 2002. New categorically denied that any unlicensed person engaged in embalming at Lake Cumberland. Williams and Wiles testified that they were never involved in the embalming process while employed at Lake Cumberland. The appellants argued that the charges against them were falsely made in retaliation by Barnhill, a politically motivated troublemaker who had been unsuccessful at extorting money from the funeral home, and by Sandra Denny, a part-time beautician for the funeral home, who owned stock in the business that she sought to sell back at an inflated price.

In its final order of September 9, 2002, the Board concluded that the funeral home and its director were guilty of all the charges against them. For employing unlicensed personnel to embalm bodies, Lake Cumberland was fined $5,000; New was fined $2,500. New was fined an additional $1,000 for allowing an employee to sign a provisional death certificate on his behalf.

In finding the appellants guilty of violating certain provisions of KRS Chapter 316 relating to the care of bodies of deceased persons, the Board relied primarily on the testimony of Barnhill and Denny. Barnhill had provided the information contained in Sturgeon's initial complaint. He testified that he began working at Lake Cumberland as a painter/janitor while it was under construction in 1998. After several months of performing odd jobs, he testified that New taught him various embalming procedures, which he then performed alone on numerous occasions. Barnhill testified that Wiles and Williams, unlicensed employees of the mortuary, also embalmed bodies. Denny, a beautician who frequently styled the hair of the deceased at Lake Cumberland, testified that she had seen Barnhill and others embalming corpses in the "prep" room of the funeral home.

---

1. Kentucky Revised Statutes.

In its findings, the Board explained its reliance on these witnesses as follows:

14. Denny's testimony was credible. She was thoughtful before answering and appeared to not respond until she was sure of the accuracy of her answers.

15. Barnhill's reputation in the community was not as solid [as Denny's]. He was known as a drinker and an avid talker which could cause him trouble....

16. Barnhill was specific and generally accurate in his descriptions of the procedures used in performing embalming services. He did not attempt to cover up for his misdeeds such as embalming without a license. Barnhill's testimony was credible. It was found by the Board that Barnhill's statements in regard to Williams'[s] and Wiles'[s] roles in performing embalming services was more credible than was Williams[s] or Wiles'[s] testimony at the Hearing.

17. Barnhill's and Denny's testimony corroborated each other's. There was no evidence that those two individuals were close friends or co-conspirators.

(Findings of Fact, Conclusions of Law and Final Order, p. 6.)

In its review, the Franklin Circuit Court agreed that the Board's decision was sufficiently supported by the evidence:

Here, the Board's findings were based in large part on the credibility of the witnesses. The Board made its findings against the Funeral Home and Mr. New. They have not been able to prove to this court that the evidence was so overwhelming as to have compelled a different finding. The findings of fact are supported by substantial evidence.

Thus, the Board's decision with respect to Count I and Count II are affirmed. (Opinion and Order, pp. 4–5.)

■■■ In the appeal brought by Lake Cumberland and New, our standard of review is the same as that employed by the Franklin Circuit Court—one of deference to the determination of an administrative agency if its findings are supported by substantial evidence and if its procedure is not tainted by arbitrariness.

Judicial review of the acts of an administrative agency is concerned with the question of arbitrariness. The findings of fact of an administrative agency which are supported by substantial evidence of probative value must be accepted as binding by the reviewing court. The court may not substitute its opinion as to the weight of the evidence given by the Commission. Upon determining that the Commission's findings were supported by substantial evidence, the court's review is then limited to determining whether the Commission applied the correct rule of law.

*Burch v. Taylor Drug Store, Inc.,* 965 S.W.2d 830, 834–35 (Ky.App.1998) (citations omitted).

■■ The appellants argue that the Board's decision is not supported by substantial evidence. The essence of their claim is that the witnesses upon whom the Board relied were neither credible nor convincing—particularly when compared to appellants' witnesses.

[Lake Cumberland and New] put on witnesses from the Somerset community who had upstanding reputations such as Coroner-elect New, Sheriff-elect Wood, Detective Whitaker, Funeral Director Garner, Pastor Wiles, Minister McCoy, Choir Minister Williams and attorney Bruce Orwin. All the above individuals, not only had a reputation within the Somerset community, but would not per-

jure themselves at the cost of their profession and/or reputation. On the other hand, the Board put on witnesses such as Ms. Sturgeon, a former Funeral Director, who only had second-hand knowledge, Mr. Barnhill, known as an occasional painter and town drunk, who did not want to report his income, and Ms. Denny, a part-time beautician who wanted to sell her Lake Cumberland Funeral Home stock back to the company for an unreasonable price and was known as "a person that really wanted her way." Neither of the Board's witnesses had any considerable record of upstanding reputation in the community or risked losing stature within their professional communities. Yet the Board opted to believe the testimony of its own witnesses over consistent testimony from reputable individuals within the Somerset community[.]

(Appellants' brief, pp. 6–7.)

■ It is a settled principle that the fact-finder in an administrative proceeding (in this case, the Board) rather than the reviewing court has the sole discretion "to determine the quality, character and substance of the evidence[.]" *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky.1985). The fact-finder "has the sole authority to judge the weight, credibility and inferences to be drawn from the record." *Miller v. East Kentucky Beverage/Pepsico, Inc.*, 951 S.W.2d 329, 331 (Ky. 1997). The five members of the Board, four of whom are experienced, practicing, licensed funeral directors (KRS 316.170) were in the best position to observe the witnesses and to assess their credibility. The Board members not only observed the proceedings, but they actively participated by asking many questions of the witnesses themselves.

"Substantial evidence" has been consistently defined in this jurisdiction as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky.1971). Barnhill testified that New taught him embalming procedures and described the specific acts that he had performed. Denny testified as to what she had observed in the embalming room of the funeral home. They have both provided testimony that constitutes substantial evidence. Thus, although we may very likely have been more persuaded by appellants' witnesses, we cannot substitute our judgment as to witness credibility for that of the Board. The conclusion of the Board was supported by substantial (but surely not compelling) evidence. We are constrained to affirm as to the appeal based on our limited standard of review.

■ In its cross appeal, the Board argues that the circuit court erred in reversing its determination that New violated KRS 213.076(1) and in vacating the fine of $1,000 assessed against him for permitting his apprentice to complete and to sign a provisional death certificate.

The facts as to this issue are not in dispute. New, accompanied by his licensed apprentice, Roy Garner, was called to the home of Teque Sears, who had just died. While New discussed the funeral arrangements with bereaved family members of the decedent, Garner completed the provisional certificate of death and signed New's name on the form. The Board concluded that New's failure to complete and to sign the form himself violated KRS 213.076(1). This statute provides in relevant part as follows:

A certificate of death or a provisional certificate of death for each death which occurs in the Commonwealth shall be filed with the cabinet or as otherwise

directed by the state registrar prior to final disposition, and it shall be registered if it has been completed and filed in accordance with this section. The funeral director, or person acting as such, who first takes custody of a dead body shall be responsible for filing the certificate of death. The funeral director, **or person acting as such,** shall obtain the required personal and statistical particulars from the person best qualified to supply them over the signature and address of the informant. The funeral director, or person acting as such, shall within five (5) days of the death, present the certificate to the attending physician, if any, or to the health officer or coroner as directed by the state registrar, for the medical certificate of the cause of death and other particulars necessary to complete the record as required by this chapter. (Emphasis added.)

The circuit court concluded that the phrase, "or person acting as such," revealed a legislative intent that persons other than funeral directors may perform the clerical work associated with the provisional report of death.

■ Our review of a question of law is *de novo* as contrasted with the deferential standard to which we are held as to questions of fact. *Faust v. Commonwealth of Kentucky, Tourism Development Cabinet, Department of Parks*, 142 S.W.3d 89, 96 (Ky.2004). The Board contends that the provisional report of death must be signed by a funeral director "or a non-funeral director who has some close relationship with the deceased, *i.e.* a family relative or religious type of relationship as with the Amish community." (Appellee's brief, p. 18.) A plain reading of the statute reveals no such intent. While the statute places the responsibility for filing the report on a licensed funeral director, it does not forbid him from delegating the task of completing the documents to his agents or employees—especially a licensed apprentice.

The judgment of the Franklin Circuit Court is affirmed both as to the appeal and the cross-appeal.

ALL CONCUR.