John F. ZINK, Appellant,

v.

COMMONWEALTH OF KENTUCKY, DEPARTMENT OF WORKERS' CLAIMS, LABOR CABINET, Appellee.

No. 93–CA–001858–MR.

Court of Appeals of Kentucky.

Dec. 2, 1994.

Discretionary Review Denied by Supreme Court Aug. 16, 1995.

John F. Zink, pro se.

William L. Neichter, Louisville, for appellant.

Valerie L. Salven, General Counsel, Frankfort, for appellee.

Before DYCHE, JOHNSON and SCHRODER, JJ.

*OPINION*

JOHNSON, Judge:

This is an appeal from a summary judgment entered July 15, 1993 by the Franklin Circuit Court in favor of the Department of Workers' Claims denying John F. Zink access to certain public records he had requested pursuant to the Kentucky Open Records Act. For the reasons below, we affirm the judgment of the circuit court.

The facts are these. John F. Zink (appellant), by letter dated June 19, 1992, made a request that the Kentucky Department of Workers' Claims (Department) provide him access under the Kentucky Open Records Act (KRS 61.870 *et seq.*) to certain records under the Department's control. Specifically, Zink wished to inspect S.F.1 forms filed with the Department pursuant to the Kentucky Workers' Compensation Act. The S.F.1 is also known as the "Employer's First Report of Injury," and includes such infor-

mation as the name and address of the employer and the nature of his business along with a brief statement of the facts giving rise to the employee's injury. But more importantly to this appeal, the form includes detailed personal information concerning the injured employee, such as name, home address, telephone number, date of birth, social security number, marital status, wage rate, and number of dependents. Appellant is an attorney whose field of practice includes workers' compensation claims. He sought to utilize the information provided by the forms to target direct mail solicitations to potential clients.

On July 1, 1992, in response to appellant's request, the Department denied full inspection as requested, stating that the forms were exempt from the open records act on the grounds (1) that compliance with the request would place an unreasonable burden on the Department pursuant to KRS 61.872(5), now amended to (6); (2) that the request to inspect the S.F.1 forms would constitute a clearly unwarranted invasion of personal privacy, pursuant to KRS 61.878(1)(a); and, (3) that the requested public records constituted preliminary matters, pursuant to KRS 61.878(1)(g) and (h), now amended to (h) and (i).

The Department offered to provide the appellant a computer print-out showing the name, date of injury, county of injury, injury code and part of body injured, and days of work missed for each of the reported injured workers. The Department also offered to supply to the appellant a key to the injury codes so that he could determine the exact nature of each reported injury. The appellant agreed to receiving these print-outs, but did not waive his initial request for full inspection.

The appellant, pursuant to KRS 61.880(2), requested that the Attorney General formally review the denial of inspection of the records in the Department's custody. The Attorney General in his published decision numbered 92–ORD–1261 and dated November 2, 1992, held that the denial was proper based upon the "unreasonable burden" exception (KRS 61.872(5), now (6)) and as a "clearly unwarranted invasion of personal privacy" (KRS 61.878(1)(a)).

The appellant, pursuant to KRS 61.882, on December 2, 1992 filed a complaint seeking a *de novo* review in Franklin Circuit Court of the denial of his request to access the forms. Cross-motions for summary judgment were filed, and the court entered summary judgment in favor of the Department. This appeal followed.

KRS 61.872(1) provides, in part, that "All public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884...." The exception central to this discussion is that in KRS 61.878(1)(a) which states, in part, as follows:

(1) The following public records are excluded from the application of KRS 61.870 to 61.884 and shall be subject to inspection only upon order of a court of competent jurisdiction....

(a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy[.]

Additionally, a further limitation on inspection appears in KRS 61.872(6) which states that "[i]f the application places an unreasonable burden in producing public records ... the official custodian may refuse to permit inspection of the public records or mail copies thereof."

We are also required to consider the aforecited sections in conjunction with KRS 61.882(3), which provides that an agency resisting disclosure has the burden of proof to sustain its action, and KRS 61.871, which provides:

The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

Appellant bases his appeal on the grounds that neither KRS 61.878(1)(a) nor KRS 61.872(6) permit the Department to deny him access to the S.F.1 forms.

 In determining whether the appellant's request constitutes clearly unwarranted invasion of personal privacy under KRS 61.878(1)(a), we are guided by our Supreme Court's precedent in *Kentucky Bd. of Examiners of Psychologists v. Courier–Journal & Louisville Times Co.,* Ky., 826 S.W.2d 324 (1992). Under that holding, our analysis begins with a determination of whether the subject information is of a "personal nature." If we find that it is, we must then determine whether public disclosure "would constitute a clearly unwarranted invasion of personal privacy." This latter determination entails a "comparative weighing of antagonistic interests" in which the privacy interest in nondisclosure is balanced against the general rule of inspection and its underlying policy of openness for the public good. *Id.* at 327. As the Supreme Court noted, the circumstances of a given case will affect the balance. *Id.* at 328.

 Clearly, much of the information contained in the S.F.1 forms touches upon the personal features of private lives. While the place of one's employment may not arise to a personal level, as one generally does not work in secret, other information such as marital status, number of dependents, wage rate, social security number, home address and telephone number are generally accepted by society as details in which an individual has at least some expectation of privacy. Appellant points out that much of this same information is contained in other public documents which are made available for public inspection such as police accident reports (made available pursuant to a line of Attorney General Opinions, *See* OAG 89–76, 83–53, 80–210, 76–478). As has been pointed out,

however, when an individual enters on the public way, breaks a law, or inflicts a tort on his fellow man he forfeits his privacy to a certain extent. *See* OAG 76–511. We also realize that telephone numbers and home addresses are often publicly available through sources such as telephone directories and voter registration lists. However, we think this information is no less private simply because that information is available someplace. We deal therefore, not in total non-disclosure, but with an individual's interest in selective disclosure.

 Having found that the forms sought by the appellant contain information of a personal nature, we proceed to determine whether such an invasion of privacy is warranted by weighing the public interest in disclosure against the privacy interests involved. We state at the outset that our analysis does not turn on the purposes for which the request for information is made or the identity of the person making the request. We think the Legislature clearly intended to grant any member of the public as much right to access to information as the next.[1] While binding precedent has yet to clearly speak to the point, we believe that the only relevant public interest in disclosure to be considered is the extent to which disclosure would serve the principle purpose of the Open Records Act. This is the approach the United States Supreme Court has taken in a similar analysis of requests under the Freedom of Information Act (FOIA). *See Dept. of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 774–75, 109 S.Ct. 1468, 1482–83, 103 L.Ed.2d 774, 796–97 (1989). As stated in *Board of Examiners, supra,* "[t]he public's 'right to know' under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the

---

1. We realize that KRS 61.874 requires an individual requesting information from a computer database for commercial purposes to state that purpose and additionally authorizes a fee in those situations. Additionally, KRS 61.872(6) al-lows an agency to deny inspection of records upon clear and convincing evidence that repeated requests are intended to disrupt other essential functions of the agency.

public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good." 826 S.W.2d at 328. At its most basic level, the purpose of disclosure focuses on the citizens' right to be informed as to what their government is doing. That purpose is not fostered however by disclosure of information about private citizens that is accumulated in various government files that reveals little or nothing about an agency's own conduct. The relevant public interest supporting disclosure in this instance is nominal at best. Disclosure of the information appellant seeks would do little to further the citizens' right to know what their government is doing and would not in any real way subject agency action to public scrutiny. While there may be some merit to appellant's assertion that the broad public interest would be served by the dissemination of information to injured workers regarding their legal rights under the workers' compensation statutes, this cannot be said to further the principal purpose of the Open Records Act.

Against an Open Records Act public interest in disclosure, which is *de minimis* at best, we weigh the interests of the injured workers in non-disclosure of the personal information contained in the S.F.1 forms. Disclosure of the requested information would release to the public the home address and telephone number of each injured employee, information he may fervently wish to remain confidential or only selectively released. The employee would then be subjected to unsolicited mail from appellant and perhaps offensive mail or telephone calls from others. The United States Court of Appeals for the Sixth Circuit Court when confronted with a FOIA request that would involve the release of home addresses of those with Veterans' Administration guaranteed loans stated that " '[t]here are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home.' (citation omitted). The importance of the right to privacy in one's address is evidenced by the acceptance within society of unlisted telephone

numbers, by which subscribers may avoid publication of an address in the public directory, and postal boxes, which permit the receipt of mail without disclosing the location of one's residence. These current manifestations of the ancient maxim that 'a man's home is his castle' (citation omitted) support the ... important privacy interest in the addresses sought." *Heights Community Congress v. Veterans Administration*, 732 F.2d 526, 529 (6th Cir.1984), *cert. den.*, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398. (1984). Similarly, many individuals choose to disseminate their home telephone numbers only on a selected basis. We, too, are hesitant to denigrate the sanctity of the home, that place in which an individual's privacy has long been steadfastly recognized by our laws and customs. One of our most time-honored rights is the right to be left alone, and we fail to see how an individual who happens to have suffered a work-related injury should have that right disturbed merely because of the injury reporting requirements of Chapter 342.

No less intrusive would be the release of the employee's social security number. Those nine digits today represent no less than the keys to an information kingdom as it relates to any given individual. Access to a wealth of data compiled by both government agencies and private enterprises such as credit bureaus is obtainable simply upon presentation of the proper social security number. Further, few things in our society are deemed of a more intimate nature than one's income. This information is commonly treated circumspectly. We also must consider the fact that other parties such as commercial advertisers and solicitors, as well as the merely curious, would have the same access under the Open Records Act as the attorney seeking the information in this case.

Because the privacy interests of the injured employees in personal details appearing on the S.F.1 forms substantially outweighs the negligible Open Records Act related public interest in disclosure, we conclude that disclosure would constitute a "clearly unwarranted invasion of personal

privacy" under KRS 61.878(1)(a). Having found the records in controversy to be exempted from disclosure under one statutory exemption, we will not lengthen this Opinion by addressing whether production of the records would amount to an unreasonable burden on the Department.

The decision of the Franklin Circuit Court is affirmed.

All concur.