BOLIN, Justice
(concurring specially).
I concur specially with the main opinion, but I write separately to address the potential divulgence of voters’ Social Security numbers as the result of any blanket discovery order directed to the Tuscaloosa County Board of Registrars allowing unfettered access to voter-registration applications.
The defendant, Albert Mack III, seeks information concerning the race and gender of members of jury venires in Tuscaloosa County from 1978 to 1995, specifically through the local board of registrars. As the main opinion correctly points out, the State does not argue that the order of the Court of Criminal Appeals makes available for inspection, either inadvertently or not, confidential information from the voter-registration applications. The only mention by the State of the possible disclosure of such information is in its reply brief, which states:
“However, simply because Mack asserts that he is willing to do the searching and copying does not mean that he will actually be granted access by the various agencies to their official files, with potentially confidential information, to sift through and copy.”
(Reply brief, p. 14.)
The State’s only specific mention of voters’ Social Security numbers, as opposed to nonspecific “confidential information,” relates to its argument that Mack’s request for discovery of records of the Department of Motor Vehicles would require the individuals’ Social Security numbers because that is what the Department uses to access information, arguing that such would be “completely impracticable and is nothing but a fishing expedition.” (Petition, p. 25.) This in no way properly addresses a crucial issue — whether unfettered access to voter-registration records would allow the disclosure of voters’ Social Security numbers. Indeed, the State takes at face value a statement from Mack’s counsel, based on a conversation with an employee of the board of registrars, that that board’s voter-registration records list only the last four digits of a voter’s Social Security number. This is true now by virtue of § 17-4-36, Ala.Code 1975, which became effective January 13, *902 2003. See Act No. 2003-813, Ala. Acts 2003. Act No. 2003-313 changed the duty of each board of registrars from obtaining a voter’s “Social Security number, if such number is known,” to obtaining only the last four digits of that number.[3] A 1977 voter-registration form approved by this Court in accordance with then § 17-4-122 (now § 17-3-52) requested Social Security numbers from registering voters. Because Mack is requesting records from 1978-1995, it is fair to assume that the board of registrars met its duty during this period and, as a consequence, that the majority of its stored application records contain full Social Security numbers.
The State does argue that compliance with the judgment of the Court of Criminal Appeals would create “an extreme burden on the state.” As pertains to the burden on the board of registrars, the State argues:
“Regarding the Tuscaloosa Board of Registrars, specifically, that agency’s records are maintained in the attic of the Tuscaloosa County courthouse. The Board of Registrars’ records are stored in boxes. The records within these boxes are not maintained in a particular order. In order for that agency to comply with a discovery order to provide demographic information, an employee would have to manually search each box of paper voter registration applications by hand and compare each application to a list of people who served on juries in Tuscaloosa County from 1978-1995. The Board of Registrars also does not have a large staff and this process would be both time consuming and labor intensive. Furthermore, as noted above, this exercise could all be a fruitless labor as there is no guarantee that searching through the Board of Registrars records *903 will reveal any person who served on [a] jury from 1978-1995, not to mention demographic information. Certainly, such a task would create an overwhelming strain and burden on that agency’s resources.”
(Petition, pp. 28-29.) Mack counters that he needs only that the information be made available to him and that he will “make arrangements to gather, review, copy or scan the necessary information.” (Emphasis added.)(Respondent’s brief, p. 25.)
Significantly, the State does not argue that the presence of, and possible disclosure of, voters’ Social Security numbers will mandate personal scrutiny by employees of the board of registrars as each individual voter-registration application is examined to see if the applicant matches the name of a venireperson supplied by the lists prepared by the circuit clerk. It is my opinion that this would have been pertinent to the State’s argument that the requested discovery would have been unduly burdensome.
Citizens applying to vote before the effective date of Act No. 2003-313 had a right to rely on their belief that their State government would not make available their Social Security numbers, which were requested by the board of registrars on their voter-registration application. Social Security numbers are private information, the unauthorized release of which can lead to identity theft. See Greidinger v. Davis, 988 F.2d 1344, 1353-54 (4th Cir.1993) (holding that the state’s requirement that a voter supply a Social Security number when registering to vote and then making voter-registration lists containing Social Security numbers available to the public infringed upon the right to vote and that the burden was not narrowly tailored to meet the state’s interest in preventing voter fraud because “armed with one’s [Social Security number], an unscrupulous individ-
ual could obtain a person’s welfare benefits or Social Security benefits, order new checks at a new address on that person’s checking account, obtain credit cards, or even obtain the person’s paycheck.... Succinctly stated, the harm that can be inflicted from the disclosure of [Social Security number] to an unscrupulous individual is alarming and potentially financially ruinous.”). The Kentucky appellate court in Zink v. Commonwealth, 902 S.W.2d 825, 829 (Ky.Ct.App.1994), accurately stated:
“Those nine digits today represent no less than the keys to an information kingdom as it relates to any given individual. Access to a wealth of data compiled by both government agencies and private enterprises such as credit bureaus is obtainable simply upon presentation of the proper social security number.”
The Alabama Legislature exempted voter-registration records from being classified as public records in § 17-3-52, Ala. Code 1975, which states, in pertinent part:
“Except as provided in Section 17-3-53, the applications of persons applying for registration shall not become public records as public records are defined under the laws of the State of Alabama, nor shall the board disclose information contained in such applications and written answers, except with the written consent of the person who filed the answer or pursuant to the order of a court of competent jurisdiction in a proper proceeding.”
Because the State has not shown a clear legal right to mandamus relief in this proceeding, I would suggest that the trial court would still be “a court of competent jurisdiction in a proper proceeding” to protect the confidentiality of the voter-registration applications as they pertain to the sensitive information contained therein, in complying with Mack’s right to discover demographic information as ordered by the Court of Criminal Appeals.

. Act No. 2003-313 amended § 17-4-36 as follows (the changes are shown by strike-throughs (deletions) and emphasis (additions)):
"(a) In order to establish the statewide voter file and to ensure its continued accuracy, it shall be the duty of the boards of registrars, on forms or in a manner rule prescribed by the Director-of Voter Registration Secretary of State:
"(1) To provide said.'director the Secretary of State the name, driver’s license number or non-driver's identification number, if such number is known, the last four digits of the Social Security number, if such number is known, date of birth, address, race, sex, and political subdivision or voting place of each registered voter in their respective counties within one month after a written request from said-direotor the Secretary of State;
"(2) To provide said-direetor the Secre-taiy of State the name, driver’s license number or non-driver's identification number, if such number is known, the last four digits of the Social Security number, if such number is known, date of birth, address, race, sex, political subdivision or voting place, place of previous registration, if applicable, and date of registration of each newly registered voter as such voter is registered;
"(3) To provide to said director the Secre-taiy of State the name, driver’s license number or non-driver’s identification number, if such number is known, the last four digits of the Social Security number, if such number is known, date of birth, address, race, sex, political subdivision or voting place, and date of reidentification of every voter who reidentifies, pursuant to Article 7 of this chapter.

“(b) Where an applicant for voter registration is unable to produce either a driver's license number, a non-driver's identification number, or the last four digits of the Social Security number, the state voter registration list shall assign a unique number which shall serve as the registrant’s voter registration identification number

''(b)"Mcmbars of local boards of registrars and members of county commissions who-fail to comply with the provisions of this-article in thoir representative capacities as such registrars and commissioners shall be guilty of-a-Class A misdemeanor and punished-as-pre-scribed by-la-Wv1'